UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STACY PENNING,
Plaintiff,

v.

WEBMD LLC,
Defendant.

Case No. 26-cv-02717-JST

**ORDER DENYING DEFENDANT'S MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS**

Re: ECF No. 5

Before the Court is Defendant WebMD LLC's motion to transfer or, in the alternative, to dismiss. ECF No. 5. The Court will deny the motion in its entirety.

## I. BACKGROUND

Plaintiff Stacy Penning brings this action on behalf of a putative statewide class based on his interactions with WebMD's medicinenet.com website, which is alleged to "provide[] a medical dictionary and information about diseases, conditions, medications, and general health to its Website visitors." First Am. Compl. ("FAC") ¶ 2 (ECF No. 1-1 at 124). He alleges that he used the website "to view medical webpage articles, and type phrases into search boxes about specific medical conditions . . . . related to serious medical conditions Plaintiff is affected by," including "descriptions and/or names of the medical conditions affecting him." *Id.* ¶ 41. WebMD allegedly "knowingly installed pixels and other tracking technologies developed and made available by Amazon . . . that intercept, record, and contemporaneously disclose the contents of its Website visitors' electronic communications alongside their personally identifiable information," without the knowledge or consent of website visitors. *Id.* ¶¶ 3, 5. Amazon, in turn, allegedly uses the information "to create a comprehensive profile of an individual used for targeted advertising with no regard to that individual's lack of consent to be profiled in such a manner," and other third

parties "can also use the information Amazon intercepts to identify users and enrich [their] own unique user profiles through a practice called cookie syncing." *Id.* ¶¶ 29, 32.

The complaint asserts three claims for relief: violation of Section 631(a) of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a); violation of Section 632(a) of CIPA, Cal. Penal Code § 632(a); and a common law invasion of privacy claim for intrusion upon seclusion. WebMD seeks to transfer this case to the District of New Jersey or, alternatively, to dismiss all three claims for failure to state a claim.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332(d)(2).

## III. MOTION TO TRANSFER

WebMD seeks to transfer this case to the District of New Jersey. A court may transfer a case to another district where the case could have been brought "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The parties do not dispute that this case could have been brought in New Jersey, so the only question is whether the relevant factors weigh in favor of transfer.

Courts should "adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citation modified). The moving party bears the "burden of showing that [the proposed transferee court is] the most appropriate forum for the action." *Id.* at 499. Factors to be considered include:

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001). "Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge." *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) (citation omitted).

Some of these factors are neutral in this case. For example, this district would be more



United States District Court
Northern District of California

United States District Court
Northern District of California

convenient for Penning, but New Jersey would be more convenient for WebMD. Convenience of the parties therefore does not weigh for or against transfer, which "would merely shift rather than eliminate the inconvenience." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Both districts also have a local interest in the controversy, as Penning and the putative class members are California residents, but WebMD has a principal place of business in New Jersey. No party has cited any claims with which this case might be consolidated in either district, nor has either party presented evidence on relative court congestion.

Penning's choice of forum weighs against transfer. "Although great weight is generally accorded plaintiff's choice of forum, . . . the named plaintiff's choice of forum [in a class action] is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). However, Penning both resides in this district and bases his claims on interactions he had with the website while located here. Thus, "[h]is choice of forum is entitled to deference, even though this factor is accorded less weight in a class action context." *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, No. 14-cv-05596-JST, 2015 WL 1738269, at *3 (N.D. Cal. Apr. 9, 2015). WebMD argues that the website can be "accessed by consumers in any state," "there is nothing about [Penning's] experience that is unique to California," and "WebMD's relevant connections to New Jersey are extensive." ECF No. 5 at 14–15. But "these facts do not negate [WebMD's] contacts with this forum," *Halcon v. Hain Celestial Grp., Inc.*, No. 21-cv-02156-JST, 2021 WL 11701387, at *3 (N.D. Cal. Nov. 19, 2021), and courts "consider[] the parties' contacts with the forum, not whether those contacts are unique or whether the parties have contacts with other forums," *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1080 (S.D. Cal. 2011).

Familiarity with applicable law also weighs against transfer, but only very slightly. Penning raises claims under California law, and a "California district court is more familiar with California law than district courts in other states." *Id.* at 1081. However, "it is routine for federal courts to analyze and apply the laws of diverse states." *Saunders v. USAA Life Ins. Co.*, 71 F. Supp. 3d 1058, 1061 (N.D. Cal. 2014).

Two factors weigh in favor of transfer: ease of access to the evidence and convenience of witnesses. It is not disputed that documentary evidence is primarily located in New Jersey, as are

WebMD's relevant leaders and employees whose testimony will be relevant to Penning's claims. However, "there is nothing to indicate that transporting records or reducing them to electronic form would cause Defendant significant hardship." *Cal. Serv. Emps. Health & Welfare Tr. Fund v. Command Sec. Corp.*, No. C-12-1079 EMC, 2012 WL 2838863, at *3 (N.D. Cal. July 10, 2012). In addition, "[t]he convenience of non-party witnesses is a more important factor than the convenience of the parties," *Clark v. Sprint Spectrum L.P.*, No. C 10-03625 SI, 2010 WL 5173872, at *3 (N.D. Cal. Dec. 15, 2010) (citation omitted), and neither party has identified any such witnesses. Courts have given "little weight to this factor" when "the vast majority, if not all, of the relevant witnesses are defendants' employees." *Kem v. Strike Advisory, LLC*, No. 2:23-cv-07459-CAS(SKx), 2023 WL 7021172, at *6 (C.D. Cal. Oct. 23, 2023); *but see In re Funeral Consumers Antitrust Litig.*, No. C 05-01804 WHA, 2005 WL 2334362, at *4 (N.D. Cal. Sept. 23, 2005) (noting that, "[e]ven where a witness is an employee of a party and will be paid, the disruption [of testifying at a trial away from home] is still hard fact" that involves "authentic outlays" to cover expenses).

On balance, although two factors weigh slightly in favor of transfer, the Court does not find that those factors outweigh Penning's choice of forum. In its statement of recent decision, WebMD cites an order transferring a case to New Jersey under similar facts. ECF No. 29 (citing *Brown v. WebMD LLC*, No. 26-cv-02920-AMO, 2026 WL 2678210 (N.D. Cal. Sept. 11, 2026)). However, this Court weighs the factors differently, giving more weight to the plaintiff's choice of forum, the fact that he was injured in this district, and California's interest in protecting its consumers, and less weight to the location of employee witnesses. *Compare Brown*, 2026 WL 2678210, at *3–5. WebMD's motion to transfer is denied.

## IV. MOTION TO DISMISS

### A. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir.

United States District Court
Northern District of California

2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations need not be detailed, but they must be "enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. In determining whether a plaintiff has met the plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Dismissal for failure to state a claim should be with leave to amend, "even if no request to amend the pleading was made, unless [the court] determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (per curiam).

**B. CIPA Section 631(a)**

Penning bases his Section 631(a) claim on allegations that WebMD "aided and conspired, agreed with, employed, permitted, or otherwise enabled its third-party tracking vendors" to "willfully and without consent of all parties to the communication, or in any unauthorized manner, read, attempted to read, and/or learned the contents or meaning of electronic communications between [Penning and WebMD] while the electronic communications were in transit or were being sent from or received at a place within California." FAC ¶¶ 63–64. WebMD moves to dismiss on two grounds: that Penning has failed to allege the requisite intent, and that he has failed to allege that the communications were intercepted "in transit."

**1. Intent**

As another court in this district has explained:

> [The fourth clause of Section 631(a)] prohibits a defendant from aiding, agreeing with, or employing a third party "***to*** unlawfully do, or permit, or cause" the third party to act in violation of the wiretapping statute. Cal. Pen. Code § 631(a) (emphasis added).
>
> That language indicates that the defendant must be acting with the third party *in order to* have the third party perform acts that violate

> the statute. At the very least, that requires both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts. By its plain terms, that statutory language does not cover, for example, a defendant who properly and lawfully provides information or access to a third party without any knowledge or intent that the third party will use the information in a manner that violates the statute. Such a defendant has not aided, agreed with, or employed the third party *to* perform acts that violate the wiretapping statute.

*Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942–43 (N.D. Cal. 2024) (emphasis in original). "Courts in this circuit are split" on the question of whether a defendant "must purposely aid conduct that it knows violates CIPA, or just knowingly and purposely aid the acts that result in the violation." *Rusow v. SkinSpirit Essential LLC*, No. 24-cv-09317-CRB, 2025 WL 4657637, at *10 (N.D. Cal. Oct. 15, 2025). For the reasons set forth in *Rusow*, this Court "reads Section 631 as only requiring intentional conduct, not knowledge of illegality." *Id.* at *11; *see also St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 WL 4369675, at *8 (N.D. Cal. Oct. 1, 2024). *YETI Coolers* is not inconsistent with this conclusion. In that case, the plaintiff alleged that YETI knowingly engaged with a third-party company, Ayden, to process payments, but the plaintiff did not allege that YETI "*knew* that Ayden's services were based on its allegedly illegal interception and storing of financial information." *YETI Coolers*, 754 F. Supp. 3d at 943 (emphasis in original). In other words, the plaintiff failed to adequately allege a Section 631(a) claim because they did not allege that YETI knew "of the underlying conduct that formed the violation, not because" they failed to allege that YETI knew "of the underlying conduct's illegality." *Rusow*, 2025 WL 4657637, at *11.

In this case, Penning alleges that WebMD "knowingly installed pixels and other tracking technologies developed by third party advertisers" and knows that those third parties intercept information "so that they can target specific users with tailored advertisements based on their interactions with Defendant's Website and online website activity." FAC ¶¶ 3–4. He further alleges that WebMD "knew that the third-party tracking technology they installed on their Website would result in the disclosure of user communications to third parties, as increasing their advertising presence on other platforms was one of Defendant's purposes for implementing such technology." *Id.* ¶ 64. This is sufficient to allege the requisite intent. *E.g.*, *Rusow*, 2025 WL

4657637, at *12 (finding sufficient allegations that the defendant "intentionally embedded the third-party tracking tools on its website, with knowledge that those tracking tools would transmit users' communications to LinkedIn and Google").

**2. "In transit"**

WebMD also challenges whether Penning has plausibly alleged that any communication was intercepted while "in transit," as required to impose liability under Section 631(a). This Court has previously explained that:

> At the motion to dismiss stage, a plaintiff is not required to allege how and when their communications are captured. A pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder. Still, a CIPA plaintiff must provide fair notice to defendant of how and when she believes the defendant or the conspiring third party intercepts her communications.

*St. Aubin*, 2024 WL 4369675, at *6 (citation modified).

Penning satisfies the requisite pleading standard here. For example, he alleges:

> 22. Specifically, a live data-traffic analysis of Defendant's Website shows that Defendant incorporated and installed third-party tracking technologies into its Website so that whenever its Website visitors interact with Defendant's Website, the contents of their communications are intercepted in real time while in transit by such third parties, including Amazon via the Amazon Trackers.
>
> 23. The Amazon Trackers include a piece of code that online media providers, like Defendant, can integrate into their websites. Once activated, the Amazon trackers track and record all users' electronic communications and online activity and the type of actions they take on the Website and disseminate that information contemporaneously to Amazon together with unique identifiers that identify Website users.

FAC ¶¶ 22–23. He also alleges that the Amazon Trackers capture information "in real-time in the form of a full descriptive URL request . . ., which reveals the exact webpage a user viewed and any relevant search terms the user entered into the Website," and that they "capture and record" information "any time a Website visitor types specific language into a search query on Defendant's Website," also "in the form of a URL request." *Id.* ¶¶ 24–25. These allegations are distinguishable "from the conclusory allegations which courts have found do not plausibly state a

United States District Court
Northern District of California

claim because they merely 'restate the pleading requirement of real time interception' without providing any 'specific facts as to how or when the interception takes place.'" *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1092 (N.D. Cal. 2025) (quoting *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758–59 (N.D. Cal. 2023)).

### C. CIPA Section 632

To state a claim under CIPA Section 632, a plaintiff "must show there was (1) an electronic recording of (2) a confidential communication and (3) all parties did not consent." *YETI Coolers*, 754 F. Supp. 3d at 943. WebMD seeks dismissal on grounds that Penning has failed to allege the second element. "A communication is confidential under § 632 if a party has an objectively reasonable expectation that the conversation is not being overheard or recorded. This is a fact-intensive inquiry that is often too difficult to resolve at the pleadings stage." *Id.*

Penning alleges that WebMD tracks "the exact webpage a user viewed and any relevant search terms the user entered into the Website," including the "specific language" a user types "into a search query." FAC ¶ 24–25. These allegations support finding a reasonable expectation of privacy. "Although Ninth Circuit law indicates that users may not have a reasonable expectation of privacy over the IP addresses of the websites they visit or URLs that only reveal basic identification information, they do over URLs that disclose either unique search terms or the particular document within a website that a person views." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) (citation modified).

WebMD argues that Penning could not have had a reasonable expectation of privacy because the information entered into the website "was neither communicated to a medical provider nor provided in the context of a patient-provider relationship." ECF No. 5 at 22. However, courts have allowed Section 632 claims to proceed when medical information was allegedly communicated online outside the context of direct communication with medical providers or a patient-provider relationship. For example, one court explained that, "while Plaintiffs may not have been communicating directly with medical care providers, they were still providing personal information in search of medical services. This could at least support a reasonable expectation that this information will be kept confidential." *L.B. v. LinkedIn Corp.*, No. 5:24-CV-06832-EJD,

2025 WL 2899514, at *18 (N.D. Cal. Oct. 10, 2025). Similarly, another court denied a motion to dismiss a Section 632 claim where the plaintiff alleged that he "entered information about his mental health concerns and therapist preferences on a website that is a mental healthcare conduit." *M.G. v. Therapymatch, Inc.*, No. 23-cv-04422-AMO, 2024 WL 4219992, at *5 (N.D. Cal. Sept. 16, 2024). A third court found sufficient allegations that the plaintiff "used the Website to research over-the-counter medical products relating to a serious medical condition affecting him [and] searched for these over-the-counter products on the Website and viewed the corresponding product pages after performing his searches." *Getz v. CVS Health Corp.*, No. 2:25-cv-04689-MWC-E, Order on Mots. to Dismiss & Strike, at 23(C.D. Cal. Oct. 24, 2025) (ECF No. 22-1 at 24) (citation modified). The allegations in this case are similar: that Penning used the website to conduct medical research "related to serious medical conditions [he] is affected by," and that his search terms "included descriptions and/or names of the medical conditions affecting him." FAC ¶ 41. The Court does not conclude at the pleadings stage that Penning has failed to allege a confidential communication, and it therefore denies WebMD's motion to dismiss Penning's Section 632 claim.

**D. Intrusion Upon Seclusion**

A plaintiff seeking to state a claim for intrusion upon seclusion "must plead that (1) a defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion occurred in a manner highly offensive to a reasonable person." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citation modified). WebMD argues that Penning's claim must be dismissed because he has failed to allege a highly offensive intrusion.

This Court has previously explained the applicable standard:

> Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is. When determining whether an invasion is highly offensive, courts consider the degree and setting of the intrusion, as well as the intruder's motives and objectives. Given the factually intensive nature of the inquiry, courts are generally hesitant to decide claims of this nature at the pleading stage. Only if the allegations show no reasonable expectation of privacy or an insubstantial impact

United States District Court
Northern District of California

> on privacy interests can the question of a serious or highly offensive invasion be adjudicated as a matter of law.

*Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 WL 1939957, at *10 (N.D. Cal. July 14, 2025) (citation modified). As discussed above, Penning has adequately alleged a reasonable expectation of privacy. The Court also cannot decide, as a matter of law, that Penning's allegations show only an insubstantial impact on privacy interests. Penning alleges that WebMD tracked, without his knowledge or consent, searches and inquiries on a medical website regarding his own serious medical conditions. This case is similar to *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 893–94 (C.D. Cal. 2024), where the court denied a motion to dismiss the plaintiff's privacy claims because the plaintiff alleged tracking of purchases "of sensitive healthcare products (Monistat and a diabetes test kit) related to specific health conditions (yeast infection and diabetes)"—i.e., products that "implicate . . . personal medical information"—such that disclosure of the information would be "likely to seriously harm the purchaser and violate social norms." WebMD argues that "a user may scour publicly available medical information for educational research, information for a friend, general knowledge, or explanation of a new article—none of which involves personal, sensitive medical information." ECF No. 5 at 24. However, Penning alleges that he was researching, on a website designed to provide medical information, serious medical conditions that affected him. Viewing the complaint's allegations in a light most favorable to Penning, the Court cannot conclude that his searches did not reveal personal medical information or that, as a matter of law, WebMD's alleged tracking resulted only in an insubstantial impact on privacy interests. WebMD's motion to dismiss Penning's claim for intrusion upon seclusion is therefore denied.

**CONCLUSION**

For the above reasons, the Court denies WebMD's motion to transfer this case to the District of New Jersey or, in the alternative, to dismiss the complaint for failure to state a claim.

**IT IS SO ORDERED.**

Dated: November 16, 2026

JON S. TIGAR
United States District Judge